UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DANIEL SKAFF, an individual, solely :
in his capacity as Stockholders' Representative,
                                                                 :
                                     Plaintiff,
                    -against-                        :

PROGRESS INTERNATIONAL, LLC, :

                                     Defendant. :

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    10/21/13   

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
KATHERINE POLK FAILLA**

12 Civ. 9045 (KPF) (FM)

**FRANK MAAS,** United States Magistrate Judge.

        This is a diversity breach of contract action. Plaintiff Daniel Skaff ("Skaff"), acting on behalf of the former shareholders of Vivaro Corporation ("Vivaro"), seeks to recover damages and other forms of relief from defendant Progress International, LLC. ("Progress"). After the entry of a default judgment against Progress, Judge Rakoff referred the case to me for an inquest. (See ECF Nos. 16, 21). For the reasons set forth below, I now recommend that Skaff be awarded the sum of $4,005,000, plus prejudgment interest on each defaulted installment payment comprising that sum calculated at the rate of 5.75% per annum from the installment due date. Skaff should further be awarded post-judgment interest from March 7, 2013, at the rate set forth in 28 U.S.C. § 1961(2), as well as legal fees and expenses in the amount of $53,976.64. Finally, the Court should appoint a receiver and require that Progress execute any documents and take any other steps necessary to enforce Skaff's contractual rights.

I.      Relevant Facts

The Amended Complaint ("Complaint" or "Compl.") and inquest papers establish as follows:

Skaff is a citizen of California.  (Compl. ¶ 1).  Progress is a Texas limited liability company with an office in Texas.  (Id. ¶ 2).

In June 2010, Vivaro was engaged in the sale of telecommunications services.  (Id. ¶ 5).  Skaff was one of Vivaro's shareholders.  (Id. ¶ 1; Aff. of Daniel Skaff, sworn to on Apr. 29, 2013 ("Skaff Aff."), ¶ 5).  That month, pursuant to an Agreement and Plan of Merger ("Merger Agreement" or "MA"), a Progress subsidiary merged into Vivaro Corporation, which, in turn, became a Progress subsidiary.  (Compl. ¶ 7).  As consideration for the merger, Progress agreed to pay Skaff and the other Vivaro shareholders, in installments, the sum of $10,667,000, plus 30% of the appraised value of an entity known as Unidos, Inc.  (Skaff Aff. ¶ 7; MA § 2.01(b)).  The Merger Agreement subsequently was amended three times through addenda.  (Compl. ¶ 9; Skaff Aff. ¶ 8).

Taking into account payments that previously had been made, as well as the Unidos appraisal, the Third Addendum called for Progress to make the following principal and interest payments to Skaff, as the Stockholders' Representative, between June 30 and December 31, 2012:

| June 30 | $330,000 |
|---|---|
| July 31 | 385,000 |
| August 31 | 440,000 |
| September 30 | 495,000 |
| October 31 | 1,100,000 |
| November 30 | 605,000 |
| December 31 | 700,000 |
| **TOTAL** | $4,055,000 |

(MA (Third Addendum at 2)). The Third Addendum characterizes these and the other installment payments as payments of the merger consideration balance, "plus seven percent (7%) interest per annum . . . , plus $1,020,000 as payment related to the sale of Unidos." (Id. at 1).

In connection with the merger transaction, Skaff and Progress also entered into a Security Agreement dated October 12, 2010. (Skaff. Aff. ¶ 11; Compl. Ex. B (Security Agreement ("SA"))). The Security Agreement required Progress to enter into a lockbox arrangement for each Deposit Account (within the meaning of the Uniform Commercial Code) that it maintained. (Skaff Aff. ¶ 12; SA § 4(a)(ii)). Progress also could not maintain any other accounts for its business operations. (Skaff. Aff. ¶ 14; SA § 4(h)). To further secure payment of the installments, Skaff was granted a first priority lien on certain "Collateral," including the Deposit Accounts and all other Progress bank accounts. (Id. § 2(a)).

Both the Merger Agreement and the Security Agreement afforded Skaff remedies in the event Progress defaulted. For example, the Security Agreement provided that Skaff could seek the appointment of a receiver to take possession of the Collateral. (Id. §§ 2(a), 6). Additionally, the Security Agreement required Progress to indemnify Skaff for any expenses that he incurred in carrying out his duties as collateral agent, including reasonable counsel fees and disbursements. (Id. § 4(c)(i)). The Merger Agreement also permitted Skaff to seek specific performance in the event of a breach. (MA § 10.06).

After June 30, 2012, Progress made only one payment to Skaff in the amount of $50,000. (Skaff Aff. ¶ 21). Progress further breached the amended Merger Agreement and the Security Agreement by failing to honor the lockbox arrangement and conducting business through accounts other than the Deposit Accounts. (Compl. ¶¶ 18, 23-24).

## II. Relevant Procedural History

Following Judge Rakoff's inquest referral, by order dated March 18, 2013, I directed that Skaff submit his inquest papers by April 29, and that Progress respond by May 13, 2013. (ECF No. 22). Although Skaff timely submitted his papers, (ECF Nos. 23-26), Progress has yet to respond.[1]

---

[1] Shawn Patrick Regan, Esq., of Hunton & Williams, entered a notice of appearance on behalf of Progress in March 2013. (ECF No. 17). For that reason, my Chambers contacted Mr. Regan in September to determine whether Progress' failure to submit any papers was an oversight. Suffice it to say, it was not.

III.  Standard of Review

In light of Progress' default, Skaff's well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claims through the submission of admissible evidence, the Court need not hold a hearing as long as (a) the Court has determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

Both requirements having been met in this case, a hearing is unnecessary.

IV.  Discussion

A.  Money Damages

As noted above, the amended Merger Agreement called for Progress to pay Skaff, as the Stockholders' Representative, a total of $4,055,000 between June 30 and December 31, 2012.  (See MA (Third Addendum at 2)).  Of this amount, Progress has

paid Skaff only $50,000. (Skaff. Aff. ¶ 21). Skaff therefore is entitled to a money judgment against Progress in the principal amount of $4,005,000.

    B.    Interest

        1.    Prejudgment Interest

In his inquest papers, Skaff seeks to recover prejudgment interest at the 9% rate set forth in Section 5004 of the New York Civil Practice Law and Rules. (Id. ¶ 24). The statutory rate is, of course, higher than the 7% rate upon which the payment schedule in the Third Addendum was (at least in part) based. This raises a question concerning the appropriate prejudgment interest rate to apply.

Whether to award prejudgment interest and, if so, the rate to be used, are "matters confided to the district court's broad discretion." Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1072 (2d Cir. 1995) (quoting Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994)). In exercising that discretion in a diversity case, the Court must look to the law of the forum state to determine which state's substantive law applies. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2d Cir. 2000); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999). In that regard, both federal and New York courts generally give effect to contracting parties' choice of law provisions. Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996) (citing Woodling v. Garrett Corp., 813 F.2d 543, 551 (2d Cir. 1987)).

In this case there is a difficulty. Although Skaff seeks to recover prejudgment interest at the New York statutory rate, the parties incorporated governing law clauses into both the Merger Agreement and the first two addenda to that agreement (but not the third). These clauses potentially conflict. Section 10.07 of the Merger Agreement states, in part: "This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that state and without regard to any applicable conflicts of law." (MA at 28). Both the First Addendum (dated December 20, 2010) and the Second Addendum (dated July 8, 2011) contain the following potentially contradictory language:

> Except as otherwise expressly provided in the merger agreement or the security agreement, in all respects, including all matters of construction, validity and performance, this amendment and the obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York applicable to contracts made and performed in that state, and any applicable laws of the United States of America.

(Addendum 1 ¶ 6; Addendum 2 ¶ 6).

Faced with conflicting contract terms, a court must interpret the instrument as a whole, giving meaning to each term if possible and rejecting interpretations that would render one clause superfluous or without meaning. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) (citing Scholastic, Inc. v. Harris, 259 F.3d 73, 83 (2d Cir. 2001), and Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094-95 (2d Cir. 1993)) ("We disfavor contract

interpretations that render provisions of a contract superfluous."); Restatement (Second) of Contracts § 203 cmt. b. (1981). Here, the conflicting clauses can be read together to give meaning to all their provisions. The first two addenda indicate that, "[e]xcept as otherwise expressly provided in the merger agreement or the security agreement," "this amendment and the obligations arising hereunder" shall be governed by New York law. (Addendum 1 ¶ 6; Addendum 2 ¶ 6) (emphasis added). This language consequently can be interpreted as applying only to obligations arising under the two addenda, rather than the Merger Agreement as a whole. When obligations arise under the Merger Agreement, and are not modified by either the First Addendum or the Second Addendum, the Merger Agreement's governing law clause thus controls. Similarly, because the Third Addendum contains no governing law clause, any obligations arising under it are covered by the original Merger Agreement's governing law clause.

The damages owed to Skaff in this action arise from obligations imposed by the Merger Agreement as modified by the Third Addendum. Therefore, to the extent that the prejudgment interest rate is based on state law, it must be calculated according to Delaware law. Under Delaware law, prejudgment interest is available as a matter of right. Trustees of Boston Univ. v. Ligand Pharm., Inc., 162 Fed. App'x 194, 197 (3d Cir. 2006). The interest is to be computed from the date payment is due. Citadel Holding Corp. v. Roven, 603 A.2d 818, 826 (Del. 1992) (citing Moskowitz v. Mayor & Council of Wilmington, Del., 391 A.2d 209, 210 (1978)). Delaware courts disfavor compound

interest, so any interest award should be calculated on a simple interest basis. <u>Summa Corp. v. Trans World Airlines</u>, 540 A.2d 403, 410 (Del. 1988).

The prejudgment interest rate in Delaware is governed by statute. Section 2301 of the Delaware Code provides that any lender may charge and collect interest "at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate." Del. Code Ann. tit. 6, § 2301(a). The current Federal Discount rate, which also was effective at the time the payments in this case became due, is 0.75%. <u>See</u> Current Discount Rates, Federal Reserve Discount Window, http://www.frbdiscount window.org/currentdiscountrates.cfm?hdrID=20 (last visited Oct. 7, 2013). Accordingly, the maximum Delaware statutory interest rate for the relevant period is 5.75% per annum.

There is a statutory exception, however, for sums exceeding $100,000, provided that repayment is not secured by a mortgage against a principal residence. <u>Id.</u> § 2301(c). In such circumstances, there is "no limitation on the rate of interest which may be legally charged." <u>Id.</u> Here, the indebtedness vastly exceeds $100,000 and is not personally guaranteed in any respect. Delaware law therefore does not limit Skaff's recovery of prejudgment interest if a writing dictates a rate higher than 5.75%.

The Third Addendum's language concerning interest is not a model of clarity. In that Addendum, Skaff and Progress provided for the payment, in installments, of a "'Merger Consideration Balance' of $6,117,000 plus seven percent (7%) interest per annum . . . , plus $1,020,000 as payment related to the sale of Unidos." (Third Addendum at 1). Notably, the Addendum does not set forth a contractual interest rate for the

outstanding balance attributable to the sale of Unidos.  For that reason, I conclude that Skaff is entitled to interest on the unpaid merger consideration at the contractual 7% rate, and on the Unidos-related balance at the Delaware statutory rate of 5.75%.  Unfortunately, the installment payment schedule does not indicate which installments (or parts thereof) are attributable to repayment of the merger consideration or Unidos.  For this reason, I recommend that prejudgment interest be awarded on all outstanding sums at the Delaware statutory rate of 5.75% per annum.

        2.    <u>Post-Judgment Interest</u>

Post-judgment interest in a civil action in federal court is governed by 28 U.S.C. § 1961.  Pursuant to that statute, post-judgment interest is to be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding . . . the date of the judgment."  28 U.S.C. § 1961(a).  Accordingly, Skaff is entitled to interest on the unpaid balance of $4,005,000 at that rate from March 7, 2013, when judgment was entered, through the date the judgment is fully satisfied.

    C.    <u>Receiver</u>

The Security Agreement also entitles Skaff to have a receiver appointed to take possession of the Collateral and to enforce Skaff's remedies as collateral agent.  (SA § 6).  The Court should therefore appoint a receiver in accordance with this provision.

D.  Specific Performance

As noted previously, the remedies available to Skaff in the event of a default include specific performance.  (See MA § 10.06).  Although the entry of a money judgment and appointment of a receiver probably diminish the importance of this form of relief, the judgment entered by the Court nevertheless should direct Progress to execute any documents and take any other steps necessary to perfect Skaff's first priority lien on the Collateral and give effect to the lockbox arrangement.

E.  Attorney's Fees

The Security Agreement also entitles Skaff to recover any cost he incurs in enforcing the Merger and Security Agreements, including the "reasonable fees and disbursements of counsel."  (SA § 4(c)(i)).  In that regard, Skaff has submitted the bills of the Pachulski, Stand, Ziehl & Jones law firm.  Between August 22 and March 31, 2012, that firm billed Skaff a total of $56,342.61 for legal services.  (Skaff Aff. ¶ 32 & Ex. 4).  Although Skaff has not submitted any biographical information concerning the timekeepers who charged time against this matter, I have examined the firm's website, (www.pszjlaw.com), and conclude that the billing rates set forth are commercially reasonable.  Some of the work for which the firm billed could, however, have been performed by more junior personnel.  I therefore recommend that the requested fees be reduced by 10%, resulting in an attorney's fee award of $50,708.35 ($56,342.61 - $5,634.26).

F.  Costs and Expenses

Skaff also seeks to recover expenses in the amount of $2,918.29 for service of process, Fed Ex mailings, electronic legal research, scanning, and copying, as well as the $350 statutory filing fee.  (Skaff. Aff. ¶¶ 32-33 & Ex. 4).  The Security Agreement entitles Skaff to recover his reasonable expenses.  (See SA § 4(c)).  Accordingly, I find that Skaff should be awarded costs and expenses in the amount of $3,268.29 ($2,918.29 + $350).

V.  Conclusion

For the foregoing reasons, I recommend that Skaff be awarded the sum of $4,005,000, plus prejudgment interest on each defaulted installment payment comprising that sum at the rate of 5.75% per annum from the installment due date.  Skaff should further be awarded post-judgment interest from March 7, 2013, at the rate set forth in 28 U.S.C. § 1961(2), as well as legal fees and expenses in the amount of $53,976.64.  Finally, the Court should appoint a receiver and require that Progress execute any documents and take any other steps necessary to enforce Skaff's contractual rights.

VI.  Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that any objections to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen days from today, with copies sent to the chambers of the Honorable Katherine Polk Failla, United States District Judge, at the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York, 10007 and to the chambers of the undersigned, at the Daniel

Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Failla. The failure to file timely objections will result in a waiver of those objections for purposes of an appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:   New York, New York
         October 21, 2013

                                          FRANK MAAS
                                  United States Magistrate Judge

Copies to:

Counsel of Record via ECF

Progress International, LLC
10190 Old Katy Road, Suite 410
Houston, Texas 77043