PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: 212-561-7700
Facsimile:  212-561-7777
John A. Morris (NY Bar No. 2405397)

Attorneys for Plaintiff, Daniel Skaff
in his capacity as Stockholders' Representative

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANIEL SKAFF, an individual, solely in his capacity as Stockholders' Representative,

        Plaintiff and Judgment Creditor,

        -against-

PROGRESS INTERNATIONAL, LLC,

        Defendant and Judgment Debtor.

12 Civ. 9045 (JSR) (FM)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR APPOINTMENT OF A RECEIVER PURSUANT TO**
**FRCP 66 AND CPLR SECTION 5228(a)**

Plaintiff and judgment creditor Daniel Skaff, solely in his capacity as Stockholders' Representative ("Plaintiff"), moves for appointment of a receiver for the assets of defendant Progress International, LLC ("Progress") pursuant to Rule 66 of the Federal Rules of Civil Procedure ("FRCP") and section 5228(a) of the New York Civil Practice Law and Rules ("CPLR").  Plaintiff brings this motion in accordance with the briefing schedule agreed to by the parties at a hearing held on May 30, 2014.

Plaintiff is indisputably entitled to the appointment of a receiver to enforce the Judgment in favor of Plaintiff against Progress for $4,005,000 in compensatory damages, plus pre- and post-judgment interest, and attorneys' fees and expenses. *See* Dkt. Nos. 32-33 (the "Judgment"), Skaff Affidavit, <u>Exhibit A</u>.  Absent appointment of a receiver with authority to take control of

1

cash, accounts, and securities owned by Progress to satisfy the Judgment, Plaintiff will be looking at perennially empty deposit accounts and will remain in the same position Plaintiff was in as of June 2012, when Progress defaulted and made this lawsuit necessary.

As discussed below, a post-judgment receiver is necessary and appropriate under FRCP 66 and CPLR § 5228 because (1) the old deposit accounts of Progress are inadequate to satisfy the Judgment, (2) a receiver will increase the likelihood of Plaintiff's rightful recovery, and (3) there is a risk that Progress will conceal assets and thereby become judgment-proof. A receiver with broad authority is also consistent with the terms of the power of attorney granted to Plaintiff in connection with the parties' agreements.

## FACTUAL BACKGROUND REGARDING ASSET RECOVERY

Progress is a Texas limited liability company that provides international telecommunications services on a resale basis. Plaintiff believes that the business of Progress, at its most basic level, consists of buying telephone "minutes" from MarcaTel, S.A. de C.V. ("MarcaTel"),[1] a competitive long distance and international telecommunications carrier in Mexico. These minutes are then sold to customers in the form of prepaid cards for international calls to Mexico. Important for this motion is the fact that Progress holds a 49 percent equity ownership interest in MarcaTel. *See* Affidavit of Daniel Skaff ("Skaff Affidavit"), ¶ 4.

Within the first year after the parties entered into the Merger Agreement described in the Complaint, Progress delayed or missed numerous scheduled payments. Skaff Affidavit, ¶ 5. Plaintiff engaged in a series of good faith negotiations with Progress executives, including its Chief Executive Officer, Robert K. Lacy, and Chief Operating Officer, Craig MacBurnett. During those discussions, the executives intimated that the assets may not be in the Progress

---

[1] MarcTel is alternatively reflected on its website www.marcatel.com as Marcatel Com S.A. de C.V.

entity for long and that Plaintiff should "take action soon." *Id.* The executives were eventually dismissed by Progress. Subsequent conversations with the former executives confirmed to Plaintiff that Progress had been diverting receivables from Vivaro Corporation to Marcatel, and bypassing the designated deposit accounts. *Id.* Thus began Progress' record of intentionally diverting money from the agreed deposit accounts and refusing to perform under the agreements. This pattern remains unchanged, as Progress now suggests it has no problem with appointing a receiver who would solely control those same deposit accounts that Mr. Lacy warned were the subject of diversion two years ago.

The Court focused on the issue of remedy futility at the hearing on May 30, 2014. Counsel's reluctance to answer the question directly during the hearing tells the Court everything it needs to know about how broad a receiver's powers will need to be in order to actually get Plaintiff's judgment satisfied:

> THE COURT: You are not disputing, however, that there is a judgment in the amount of about $4 million in favor of the plaintiff, are you?
>
> MR. REGAN: Not at all, your Honor.
>
> THE COURT: Is your client thinking about paying it? No, right? I mean, how are they to get the money to satisfy that judgment. As I'm recalling, I think I left open the possibility that they could bring further action to recoup funds for later years that were not covered by the initial complaint.
>
> MR. REGAN: You did.
>
> THE COURT: So they may be owed something more than $4 million, and --
>
> MR. REGAN: Postjudgment interest.
>
> THE COURT: And all of that.
>
> MR. REGAN: Correct.
>
> THE COURT: If there is nothing in these deposit accounts, how are they to satisfy that?

MR. REGAN:   I think they would satisfy it first by taking whatever is in the deposit accounts.  Then they would satisfy it through postjudgment discovery -- the way folks satisfy judgments all the time:  Take postjudgment discovery to figure out where assets are, to determine who the other creditors are, and to pursue the appropriate relief to the extent they can obtain recovery at that time.

*See* Declaration of John A. Morris ("Morris Dec."), executed on June 6, 2014 and filed herewith, Ex. B at 8:24-9:23.

Plaintiff does not need to take any post-judgment discovery to have a receiver pursue the assets identified in the Skaff Affidavit, consisting of (1) Progress' income from the sale of minutes that has already been or is being diverted, and (2) Progress' 49% ownership interest in MarcaTel.  Skaff Affidavit, ¶ 7.  Additionally, the receiver should be empowered to take control of all of the company's cash.  If these assets prove to be worth less than the judgment amount, then Plaintiff can avail itself of post-judgment discovery to look for other assets.

Plaintiff seeks appointment of a receiver to take control of the cash and other assets of Progress in satisfaction of the Judgment.  The receivership that Progress proposes– related solely to control of the old deposit accounts, which have likely been inactive or empty for years – will be ineffective.  Likewise, an execution levied against those old deposit accounts will be ineffective.

The receiver needs to have authority to collect and liquidate whatever cash, accounts receivable, or MarcaTel securities are available, including the ability to market and sell Progress' stock holdings in MarcaTel.  Absent this authority, Progress will continue to divert its assets and flaunt its obligation to satisfy the Judgment.

//

//

//

//

# LEGAL ARGUMENT

### A.  Plaintiff Is Entitled to the Appointment of a Receiver Over Progress Pursuant to Federal Rule of Civil Procedure 66 and CPLR § 5228(a).

FRCP 66 provides for the appointment of a receiver in connection with federal court judgment remedies. Rule 66 states, "[T]he practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Under the historical practice of New York law, appointment of a receiver after entry of judgment is governed by CPLR § 5228.

CPLR section 5228 (a) provides:

> **Appointment of receiver.** Upon motion of a judgment creditor, upon such notice as the court may require, ***the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment.*** As far as practicable, the court shall require that notice be given to the judgment debtor and to any other judgment creditors of the judgment debtor. The order of appointment shall specify the property to be received, the duties of the receiver and the manner in which they are to be performed. A receiver shall have no power to employ counsel unless expressly so authorized by order of the court. A receiver shall be entitled to necessary expenses and to such commissions, not exceeding five percent of the sums received and disbursed by him, as the court which appointed him allows, but if a judgment creditor is appointed receiver, he shall not be entitled to compensation. If a receiver has been appointed, a court making an order directing payment, or delivery, of property shall direct that payment, or delivery, be made to the receiver rather than to a sheriff. Sections 6402, 6403, 6404 and 6405 are applicable to receivers appointed under this subdivision.

CPLR § 5228(a) (emphasis added). Thus, upon motion of a judgment creditor, the court may appoint a receiver to do whatever is necessary to satisfy the judgment. *Chlopecki v. Chlopecki,* 745 N.Y.S. 2d 228, 229 (3d Dep't 2002) ("It is well settled that upon motion by a judgment creditor, the court may, in its discretion, appoint a receiver to sell any real property in which the judgment debtor has an interest for the purpose of satisfying an outstanding judgment.").[2]

### B.   The Court Should Exercise Its Discretion Under CPLR Section 5228 to Appoint a Receiver to Aid Plaintiff's Collection of the Judgment.

The appointment of a receiver pursuant to CPLR section 5228 is within the court's sound discretion. In making the decision regarding a receivership appointment, courts typically consider three factors: (1) alternative remedies available to the creditor; (2) the degree to which a receivership will increase the likelihood of satisfaction of the judgment; and (3) the risk of fraud or insolvency if a receiver is not appointed. *Id. See also Hotel 71 Mezz Lender LLC v. Falor,* 14 N.Y. 3d 303 (2010). These factors are not always entirely distinct. For example, in *Hotel 71 Mezz Lender LLC v. Falor,* the Court of Appeals affirmed the appointment of a post-judgment receiver in favor of the lender creditor where the defendant's assets consisted of numerous limited liability company memberships. The court explained that the intangible ownership interests of the defendant warranted a receivership because a sheriff could not readily sell such interests; a receiver would be better able to marshal and liquidate assets; and the defendant risked being unable to satisfy the outstanding $52 million judgment. *Id.* at 317-18.

Each of the factors supporting the appointment of a post-judgment receiver are present in this case.

//

---

[2] Plaintiff has provided notice of this Motion to Progress and to the one judgment creditor that has been identified by Progress. Morris Dec. ¶ 4.

### 1.    Alternative Remedies Will Not Satisfy Plaintiff's Judgment.

Alternative remedies of collection – for instance, by execution or turnover – will not satisfy Plaintiff's Judgment against Progress.  A receiver must have authority to locate the assets, take control of them, and turn them into cash that can be used to satisfy the Judgment.

In *United States v. Zitron,* 1990 WL 13278 (S.D.N.Y. Feb. 2, 1990), cited by *Hotel 71 Mezz Lender v. Falor, supra,* the district court ordered appointment of a post-judgment receiver over a debtor's financial interests in certain corporations to satisfy a defaulted promissory note. The *Zitron* court observed that there was no viable alternative other than a receivership because all previous attempts at repayment schedules had failed to secure a single payment from the debtor. *Id.* at *1 (opposing corporations "neither challenge the government's assertion that it has no other recourse for enforcing the judgment nor offer a viable alternative to ensure its satisfaction."). *See also Sealy v. Sealy,* 394 N.Y.S. 2d 281, 282 (2d Dep't 1977) (receiver appointed where judgment debtor failed to explain why payment had not been made and presented no evidence of financial condition of his corporation).

Similarly, in *Spotnana, Inc. v. American Talent Agency, Inc.,* 2013 WL 227546 (S.D.N.Y. Jan. 22, 2013), the district court exercised its discretion to appoint a receiver over the debtors' assets to satisfy a judgment entered following the breach of a settlement agreement. The court used harsh language to describe how the debtors had no intention of voluntarily satisfying the judgment, thereby warranting appointment of a receiver:

> Under the circumstances of this case, the Court finds that exercise of its discretion to appoint a receiver is warranted.  First the Court has provided the Judgment Debtors more than enough time to work toward satisfying the judgment informally and without the Court's intervention.  Unfortunately, it is now evident that the Judgment Debtors have no intention of satisfying the judgment on their own. Indeed, despite their acknowledgement that a substantial amount of money would still be owed on the judgment even if they obtained full relief requested in their motion to amend [the judgment], the Judgment Debtors made no payment on the judgment in 2012....

> Receivership will therefore increase the likelihood of satisfaction given that ATA continues to generate revenue.

*Id.* at *6. The *Spotnana* court went on to explain that the debtors' ownership interests in closely held companies were the kind of intangible interests that are particularly appropriate for administration by a receiver. *See also Hotel 71 Mezz Lender LLC v. Falor, supra,* 14 N.Y. 3d at 317-18 (receivership over debtors' ownership interests in various LLCs); *Udel v. Udel,* 370 N.Y.S. 2d 426, 428 (Civ. Ct. 1975) (lack of marketability of stock required receivership in lieu of turnover to sheriff); *United States v. Zitron,* 1990 WL 13278 at *2-3 (receiver over debtor's corporate interests).

In this case, the Merger Agreement between the parties was amended three times to revise the payment schedule due from Progress. Skaff Affidavit, ¶ 6. Progress defaulted and, despite demands by Plaintiff, failed to pay its obligations. Plaintiff was forced to file a lawsuit to which Progress similarly defaulted, only to contest the post-judgment question of the involvement of a receiver. Two years have elapsed since Progress' default and three months have elapsed since the Court entered a Judgment against Progress for over $4 million. Yet, when pressed about Progress' intention of satisfying the Judgment, the Court was told that Plaintiff would have to rely on post-judgment discovery to identify assets. Progress seeks to limit a receiver's authority to the old deposit accounts for the simple reason that there is no money in such accounts, and the Judgment will never be satisfied. A receiver with authority to seize income and direct the flow of money is the only viable means of collection.

Public records confirm that Progress holds a 49 percent ownership interest in MarcaTel. A receiver should have authority to take control of the stock, value the interest and then sell it to satisfy Plaintiff's Judgment. Any alternative allows Progress to maintain itself as a shell or ghost company with its primary asset shielded from liability.

### 2.   Appointment of a Receiver Will Increase the Likelihood of Plaintiff's Recovery and Satisfaction of the Judgment.

The second factor considered by courts under CPLR § 5228(a) is whether a receivership will increase the likelihood that the creditor's judgment will be satisfied. This factor is satisfied even where there are other avenues of recovery, but a receiver will increase the likelihood of satisfying the judgment. Thus, in *Chlopecki v. Chlopecki,* 745 N.Y.S. 2d at 230, the court concluded that continued payments through wage garnishment over the past eight years did not preclude appointment of a receiver to sell property held in co-tenancy by the debtor. *Id.* ("[I]n light of the outstanding amounts, it will take an inordinate amount of time to satisfy the remaining child support judgments. The appointment of a receiver will greatly increase the likelihood of satisfying respondent's obligations…").

In this case, the deposit accounts of Progress (to the extent that they still exist) are insufficient to satisfy Plaintiff's Judgment. Progress' counsel bluntly told the Court that. Appointment of a receiver to administer and collect cash, accounts receivable, and stock of Progress, including Progress' ownership interests in MarcaTel and any other entities, is the *only* means of providing some likelihood of satisfying the Judgment in favor of Plaintiff.

### 3.   If a Receiver Is Not Appointed, Progress May Conceal Its Assets, and May Already be Insolvent.

The third factor considered by courts under CPLR § 5228 is whether there is a risk of fraud by the debtor or insolvency if a receiver is not appointed. *See Hotel 71 Mezz Lender LLC v. Falor,* 14 N.Y. 3d at 317.

If, as Plaintiff believes, Progress cannot demonstrate that it is able to pay the Judgment that is now due and owing, then there is a risk of insolvency. *Id.* at 317-18 ("identifiable risk" that debtor would be unable to satisfy judgment supported appointment of a receiver). *Cf.*

*United States v. Zitron,* 1990 WL 13278 at \*2 ("precarious financial status" evidenced in part by fact that principal subsidiary filed for chapter 11 bankruptcy and related entities had defaulted on millions of dollars of bonds).[3] Plaintiff has good reason to believe that Progress cannot and will not pay the $4 million judgment from available cash because it has hired lawyers to contest the enforcement of an uncontested judgment in an effort to forestall paying. In addition, based on information provided by Progress, Plaintiff believes that Progress has at least one other judgment creditor. Morris Dec. ¶ 4.

Furthermore, given that assets have already been diverted (as explained by Progress CEO Robert Lacy), there is an obvious risk that Progress will continue to conceal its assets and divert money from satisfaction of the Judgment. Progress has failed to pay amounts owing to Plaintiff for the last two years and it will not voluntarily direct monies to deposit accounts for collection by Plaintiff. A receiver with broad authority to marshal the cash, account receivable and stock assets is crucial to any hope of satisfaction of the Judgment.

## CONCLUSION

Progress remained silent for many months while this case was pending until after this Court entered its Judgment. Progress was well aware that Plaintiff would seek appointment of a receiver to obtain full performance of the parties' transactional agreements – including payments owed from Progress to Plaintiff. Now that the Plaintiff holds the Judgment, Progress asks the Court to limit Plaintiff's collection remedy to empty deposit accounts so that Progress may continue to avoid payment and otherwise continue to divert its assets. Irrespective of any contractual limitations on the appointment of a receiver in the event of default, Plaintiff is now a

---

[3] Vivaro Corporation, a wholly-owned subsidiary of Progress, filed a petition for chapter 11 bankruptcy in or about September 2012.

judgment creditor with the right to enforce the Judgment by appointment of a receiver under FRCP 66 and CPRL § 5228.

A receiver with broad authority to collect from Progress is a necessary and appropriate exercise of this Court's discretion under applicable law because alternative remedies will not satisfy Plaintiff's Judgment, and a receiver is the only real means of efficiently recovering amounts owed.  For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed *Order Appointing Jeffrey A. Compton as Receiver for Progress International, LLC,* attached to the Morris Dec. as Exhibit C.

New York, New York
Dated:  June 6, 2014

PACHULSKI STANG ZIEHL & JONES LLP

By:  */s/ John A. Morris*
     John A. Morris

780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

Attorneys for Plaintiff, Daniel Skaff in his capacity as Stockholders' Representative of Vivaro Corporation